UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

OLIVIA L. MOORE,

     Plaintiff,

v.                                              Case No. 5:16cv294-CJK

NANCY A. BERRYHILL, Acting
Commissioner of the Social Security
Administration,

     Defendant.
_____/

## MEMORANDUM ORDER

This case is before the court pursuant to 42 U.S.C. § 405(g) for review of a final determination of the Commissioner of Social Security ("Commissioner") denying Olivia L. Moore's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-34. The parties have consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c) and FEDERAL RULE OF CIVIL PROCEDURE 73 for all proceedings in the case, including entry of final judgment. Upon review of the record before the court, I conclude the findings of fact and determinations of the Commissioner are supported by substantial

evidence. The decision of the Commissioner, therefore, will be affirmed and claimant's application for benefits will be denied.

## ISSUES ON REVIEW

Ms. Moore, who will be referred to as claimant, plaintiff, or by name, raises 3 issue on appeal, arguing the ALJ erred in (1) disregarding the opinion of her treating physician, Michael Barnes, M.D.; (2) failing to consider the combination of her impairments; and (3) failing to find obesity a medically determinable severe impairment, either singly or in combination with her other impairments.

## PROCEDURAL HISTORY

Ms. Moore filed an application for DIB in February 2013, alleging disability beginning March 1, 2009. T. 84, 165-70.[1] Her claim was denied initially and on reconsideration. T. 92, 105-10. After filing a request for a hearing, Ms. Moore appeared before an Administrative Law Judge ("ALJ") on February 3, 2015. T. 51-83. On March 20, 2015, the ALJ issued a decision denying Ms. Moore's claim for benefits. T. 8-50. Ms. Moore petitioned the Appeals Council for review of the ALJ's

---

[1] The administrative record, as filed by the Commissioner, consists of 8 volumes (docs. 12-1 through 12-8) and has 356 consecutively numbered pages. References to the record will be by "T.," for transcript, followed by the page number.

Case No. 5:16cv294-CJK

decision.  T.6.  The Appeals Council denied the request; as a result, the ALJ's decision became the final determination of the Commissioner.  T. 1-4.

FINDINGS OF THE ALJ

In his written decision, the ALJ made a number of findings relevant to the issues raised in this appeal:

- "Through the date last insured, the claimant had the following severe impairments: major depression, recurrent, in remission; dysthymic disorder; generalized anxiety disorder; and panic disorder; hypertension; arthritis; degenerative joint disease; and chronic fatigue syndrome (20 CFR 404.1520(c)."  T. 13.

- "Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)."  T. 14.

- "[T]hrough the date last insured, the claimant had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except th[at] she could have frequently used both hands for repetitive action such as in pushing and pulling of arm controls, simple grasping,

reaching (including overhead), and for fine manipulation.  She could have occasionally used either foot for pushing or pulling leg controls. She could have frequently balanced, stooped, and crouched; occasionally kneeled, crawled, and climbed stairs and ramps; and never climbed ladders, ropes or scaffolds.  She could have tolerated occasional exposure to moving machinery, driving automotive equipment with a clutch, and marked changes in temperature and humidity.  She could have tolerated no exposure to unprotected heights.  She experienced a moderate degree of pain which occasionally interfered with concentration, persistence, and pace but did not require abandonment of the work or workstation.  This was not a continuous concept and occurred intermittently.  The claimant could respond appropriately to supervisors, but interaction should be casual and nonconfrontational and feedback should be supportive.  The claimant could respond appropriately to coworkers, but interaction should be casual and nonconfrontational.  The claimant could respond appropriately to customers or other members of the general public, but interaction should be casual and nonconfrontational.  The claimant could use judgment in

simple one or two-step work-related decisions. The claimant could not use judgment in detailed or complex work-related decisions. The claimant could deal with changes in a routine work setting, but changes should be infrequent and presented gradually. The claimant could understand, remember, and carry out simple one and two-step instructions. The claimant could not understand, remember, and carry out detailed or complex instructions. The claimant could maintain attention, concentration, or pace for periods of at least two hours, with regular breaks sufficient to perform simple, routine, and repetitive tasks. The claimant could maintain activities of daily living. The claimant experienced no episodes of decompensation that were of extended duration." T. 15-16.

- "Through the date last insured, the claimant was capable of performing past relevant work as a janitor. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565.)" T. 44. Plaintiff also was capable of performing other work that exists in significant numbers in the national economy, including kitchen assistant, produce packer,

and laundry worker.  T. 44-46.

• "The claimant was not under a disability, as defined in the Social Security Act, at any time from March 1, 2009, the alleged onset date, through December 31, 2013, the date last insured (20 CFR 404.1520(f))."  T. 46.

## STANDARD OF REVIEW

A federal court reviews the "Commissioner's decision to determine if it is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997); *see also Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied.").  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (*quoting Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)).  Even if the evidence preponderates against the Commissioner's decision,

the decision must be affirmed if supported by substantial evidence. *Sewell v. Bowen*, 792 F.2d 1065, 1067 (11th Cir. 1986).

When reviewing a Social Security disability case, the court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner.]'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (*quoting Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)); *see also Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("In determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings.") (*citing Black Diamond Coal Min. Co. v. Dir., OWCP*, 95 F.3d 1079, 1082 (11th Cir. 1996)). A reviewing court also may not look "only to those parts of the record which support the ALJ[,]" but instead "must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983). Review is deferential to a point, but the reviewing court conducts what has been referred to as "an independent review of the record." *Flynn v. Heckler*, 768 F.2d 1273 (11th Cir. 1985).[1]

---

[1] The Eleventh Circuit not only speaks of an independent review of the administrative record, but it also reminds us that it conducts a *de novo* review of the district court's decision on whether substantial evidence supports the ALJ's decision. *See Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability, the physical or mental impairment must be so severe that the plaintiff not only is unable to do her previous work, "but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423(d)(2)(A).

Pursuant to 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4), the Commissioner analyzes a disability claim in 5 steps:

1. If the claimant is performing substantial gainful activity, she is not disabled.

2. If the claimant is not performing substantial gainful activity, her impairments must be severe before she can be found disabled.

3. If the claimant is not performing substantial gainful activity and she has severe impairments that have lasted or are expected to last for a continuous period of at least 12 months, and if her impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4. If the claimant's impairments do not prevent her from performing her past relevant work, she is not disabled.[2]

5. Even if the claimant's impairments prevent her from performing her past relevant work, if other work exists in significant numbers in the national economy that accommodates the claimant's residual functional capacity and vocational factors, she is not disabled.

Step 5 (or step 4 in cases in which the ALJ decides a claimant can perform past work) is generally where the rubber meets the road. At that point, the ALJ formulates the all-important residual functional capacity ("RFC"). The ALJ establishes RFC, utilizing the impairments identified at step 2, by interpretation of (1) the medical evidence; and (2) the claimant's subjective complaints (generally complaints of pain). Residual functional capacity is then used by the ALJ to make the ultimate vocational determination required by step 5.[3] "[R]esidual functional capacity is the most [a claimant] can still do despite [claimant's] limitations.[4] 20 C.F.R. §§ 404.1545(a)(1),

---

[2] Claimant bears the burden of establishing a severe impairment that keeps her from performing her past work. *Chester v. Bowen*, 792 F. 2d 129, 131 (11th Cir. 1986).

[3] "Before we go from step three to step four, we assess your residual functional capacity. (See paragraph (e) of this section.) We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps." 20. C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

[4] In addition to this rather terse definition of RFC, the Regulations describe how the Commissioner makes the assessment:

416.945(a)(1).  Often, both the medical evidence and the accuracy of a claimant's subjective complaints are subject to a degree of conflict and that conflict leads, as in this case, to the points raised on judicial review by the disappointed claimant.

FACT BACKGROUND[5]

Ms. Moore was born on September 10, 1951.  T. 58.  She was 58 years old at the time of the alleged onset date and 63 years old at the time of the hearing.  T. 58. She has a general equivalency diploma and past relevant work as a school custodian, a position she held for more than 30 years.  T. 59-60, 229.  Ms. Moore alleged

---

(3) Evidence we use to assess your residual functional capacity. We will assess your residual functional capacity based on all of the relevant medical and other evidence. In general, you are responsible for providing the evidence we will use to make a finding about your residual functional capacity.  (See § 416.912(c).)  However, before we make a determination that you are not disabled, we are responsible for developing your complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help you get medical reports from your own medical sources.  (See §§ 416.912(d) through (f).) We will consider any statements about what you can still do that have been provided by medical sources, whether or not they are based on formal medical examinations. (See § 416.913.) We will also consider descriptions and observations of your limitations from your impairment(s), including limitations that result from your symptoms, such as pain, provided by you, your family, neighbors, friends or other persons.  (See paragraph (e) of this section and § 416.929.)[.]

20 C.F.R. § 416.945(a)(3).

[5]  The medical and historical facts of this case, as set out below, were derived primarily from plaintiff's testimony at the hearing and also the administrative record.

Case No. 5:16cv294-CJK

disability due to depression; anxiety; nerves; pain/arthritis in the legs, knees, and back; fibromyalgia; and fatigue. T. 62-72.

When asked at the hearing what impairment or physical condition keeps her from working, Ms. Moore responded "[i]t's hard for me to stay up on my legs a whole lot of the time." T. 62. After the ALJ clarified that he was inquiring about specific impairments, Ms. Moore stated "it's my nerves, I'm depressed – depression, anxiety attacks. I don't know how to explain to you everything that's wrong with me. . . ." T. 62. She then said she has arthritis in her legs, knees, and back and that Dr. Barnes, her primary care physician, recently indicated she has fibromyalgia. T. 62-63. When asked about fatigue, claimant said "I can't hardly do anything when I don't have to rest." T. 63. When asked about pain, she said "I'm in pain right now." T. 64. Ms. Moore described the pain as "like a dull bad aching and into my back. It just like catches, and I can't hardly go. I have to get off my feet to let the pain in my back kind of ease off some. I do a little bit at the house and then I have to sit down and I'd have to get up and do a little bit more." T. 64. When questioned about the intensity of the pain, Ms. Moore said "[i]t gets pretty rough." T. 64. She initially rated it "[m]aybe six to eight" on a 10-point scale. T. 64. She then said it was "[m]aybe four, five" and lasted "[s]ometimes a couple hours." T. 65. She said she experiences pain

"[j]ust about every day, sometimes more than one time a day" and has "to take something to get it to ease off." T. 65. She identified stress as a pain-inducing factor. T. 65.

Ms. Moore said she has problems being around people. T. 68. She said she did not leave her house; she then said when she goes to the store, she stays in the car – "[i]f I get out and go in, it ain't long, and I have to go get in the car. I can't – I'm about crazy right now from being in the lobby out there." T. 68. She cannot deal with strangers or handle stress or pressure. T. 68-69. She can stand "[m]aybe ten minutes, if that much sometimes," and "[m]aybe an hour all day long, if that long." T. 69. She "can't sit very long." T. 69. She has to "get up and move around a little bit, and then . . . sit back down." T. 69. She was unable to identify how long she is able to sit, but after the ALJ observed she had been sitting in the hearing for 25 minutes, Ms. Moore said she could not sit for another 25 minutes without being in pain and, in fact, was in pain at the time. T. 70. She said she has been "sitting out there rubbing my legs the whole time just about that I've been sitting there." T. 70. She finally stated she could sit "[m]aybe 15 to 20 minutes without it starting hurting [her] . . . " and "four hours, maybe five hours" in an eight-hour day. T. 70-71. She

could walk for "[m]aybe an hour" in an eight-hour day and carry "[a]t the most probably seven, eight, maybe ten pounds." T. 71-72.

Ms. Moore said she goes to bed around 10:00 p.m., sleeps in a recliner, and wakes up at approximately 5:00 a.m. T. 72, 75. She has breakfast around 7:00 or 7:30. T. 72. She then does "a little bit of housework in between having to stop and rest." T. 72. She gets dressed. T. 72. While resting, she sometimes watches television. T. 72. She has lunch around 12:00 or 12:30. T. 72. She then does "a little bit of housework, tr[ies] to wash the clothes." T. 72. She eats dinner around 5:00 or 6:00, after which she "[b]asically just sit[s] there and watch[es] TV and take[s] a bath and, you know." T. 72-73. When asked about the chores she regularly performs, Ms. Moore said she tries to keep the house clean. Her husband cooks, washes dishes, and shops; she sweeps, vacuums, mops, and washes clothes. T. 73. She makes beds with her husband's help. T. 73. At the time of the hearing, Ms. Moore was taking Wellbutrin, Trazadone, Concerta, Premarin, Xanax, Hyzaar, and Adderall. T. 66.

Although the ALJ ultimately found plaintiff could perform her past relevant work, he called a vocational expert, Ron Maine, to testify at the hearing. T. 75. Mr. Maine identified claimant's past relevant work as custodial/janitorial and testified that

if he were to fully credit Ms. Moore's testimony, he would conclude she was unable

to perform her past relevant work or any other work existing in the regional economy.

T. 78-79. The ALJ then posed the following hypothetical:

> Please assume an individual of the claimant's age which at
> the time of the [date last insured] was 62, she's now 63,
> education high school, and past relevant work experience.
> Please assume that I find her capable of performing the
> exertional demands of medium work as those terms are
> defined in the commissioner's regulations. Please factor
> into your response the following other exertional and non-
> exertional limitations: that she can frequently use her hands
> for simple grasping, pushing, or pulling of arms for gross
> and fine manipulation, occasionally use her feet for
> pushing and pulling of light controls, frequently stoop and
> crouch, occasionally kneel and crawl, never climb ladders,
> ropes, or scaffolds, occasionally climb stairs and ramps,
> frequently balance, and frequently reach overhead, never
> work around unprotected heights, occasionally work
> around moving machinery, exposure to marked changes in
> temperature and humidity, and drive automotive equipment
> requiring the use of a clutch. The hypothetical individual
> experiences a moderate degree of pain which occasionally
> interferes with concentration, persistence, and pace but
> does not require the hypothetical individual to bend at her
> work station. This is not a continuous concept that occurs
> intermittently. The hypothetical individual can respond
> appropriate[ly] to supervisors but should be casual and
> non-confrontational and feedback should be supportive,
> can respond appropriately to co-workers but should be
> casual and non-confrontational, can respond appropriately
> to customers or other members of the general public but
> should be casual and non-confrontational, can use

judgment in simple one or two-stop work-related decisions, cannot use judgment in detailed or complex work-related decisions, can deal with changes in her work setting but the changes should be infrequent and preside gradually, can understand, remember, and carry out simple one and two-step instructions, cannot understand, remember, and carry out detailed or complex instructions, can maintain attention and concentration or pace for periods of at least two hours with regular breaks, sufficient to perform simple routine and repetitive tasks, can maintain activities of daily living, and experiences no episodes of decompensation needs of extended duration. . . . Considering the exertional and non-exertional limitations from that hypothetical, can you give an opinion whether such an individual could perform any of the past relevant work you identified.

T. 80-81. Mr. Maine responded in the negative. T. 81. When asked whether he had an opinion as to "whether such an individual could perform other work existing in the regional or national economy," Mr. Maine said "[g]iven those limitations and restrictions," Ms. Moore could perform the jobs of kitchen assistant, produce packer, and laundry worker, all of which are medium exertion, unskilled jobs. T. 81.

<u>ANALYSIS</u>

Ms. Moore first argues the ALJ erred in disregarding Dr. Barnes' opinions. The ALJ disregarded Dr. Barnes' opinions because he found them "brief, conclusory, and unsupported by objective clinical evidence or laboratory findings." T. 42. Specifically, the ALJ observed that "Dr. Barnes's treatment notes are very scant and

he cites very few medical signs or findings, noting mainly the claimant's self-reports and his diagnoses." T. 42. "Furthermore," the ALJ found, "Dr. Barnes's assessment of the claimant's mental functioning is totally contrary to the monthly progress notes authored by her treating psychiatrist, who treated the claimant on a monthly basis for 7 years. Finally, Dr. Barnes is a general practitioner, and as such, psychiatry lies outside his area of expertise." T. 42. The ALJ gave "greater weight to the opinions of the two treating psychiatrists of record . . . ." T. 42.

Absent good cause, the opinion of a claimant's treating physician must be accorded considerable or substantial weight by the Commissioner. *See Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004); *Lewis*, 125 F.3d at 1440; *Broughton v. Heckler*, 776 F.2d 960, 960-61 (11th Cir. 1985); *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986). "Good cause" exists when: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Phillips,* 357 F.3d at 1241; *see also Lewis*, 125 F.3d at 1440 (citing cases). If a treating physician's opinion as to the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with

other substantial evidence in the record, the ALJ is to give it controlling weight. *See* 20 C.F.R. § 404.1527(c)(2). Where a treating physician has merely made conclusory statements, however, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen,* 816 F.2d 578, 582 (11th Cir. 1987). When a treating physician's opinion does not warrant *controlling* weight, the ALJ nevertheless must weigh the medical opinion based on (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical impairments at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d).

Opinions on certain issues, such as a claimant's RFC and whether a claimant is disabled, "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(d), 416.927(d); *see* SSR 96-5p. Opinions reserved to the Commissioner, even when offered by a treating physician, are not

entitled to controlling weight or special significance. *See* SSR 96-5p. "Giving controlling weight to such opinions . . . would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled." *Id.* Although a physician's opinions about what a claimant can still do or the claimant's restrictions may be relevant, therefore, such opinions are not determinative because the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. §§ 416.912(b)(2), 416.913(b)(6), 416.927(d)(2), 416.945(a)(3), 416.946(c); SSR 96-5p.

"When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate [his] reasons." *Phillips*, 357 F.3d at 1241. Failure to do so is reversible error. *Lewis*, 125 F.3d at 1440 (*citing MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)). An ALJ may choose to accept some conclusions – or restrictions – within an opinion while rejecting others. If such a choice is made, in addition to explaining the overall weight given to a particular medical opinion, the ALJ also must explain "'with at least some measure of clarity the grounds for [a] decision'" to adopt particular aspects of a medical opinion. *Winschel v. Comm'r Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (*quoting Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984)). Failure to explain the rationale for crediting only

certain aspects of an opinion will result in a reviewing court "declin[ing] to affirm 'simply because some rationale might have supported the ALJ's conclusion.'" *Id.*

The ALJ's decision to disregard Dr. Barnes' opinions is supported by substantial evidence in the record. Dr. Barnes treated plaintiff from October 2011 through January 2014, initially for hormone therapy. T. 291-315. According to Dr. Barnes' notes, Ms. Moore's physical examinations were largely normal, other than hoarseness, sinus/cold issues, and reports of occasional hip pain that "comes and goes." T. 300. Ms. Moore reported symptoms of anxiety and depression. T. 297, 302, 304, 306. Dr. Barnes diagnosed hysteria, hypertension, extreme anxiety, arthritis, severe bipolar anxiety, severe arthritis of the knee, degenerative joint disease/back pain, depression, urticaria/hives, chronic fatigue syndrome, and dysphonia. T. 293. The record reveals no objective medical evidence that any of the diagnosed conditions had any impact on plaintiff's ability to function.

Nevertheless, in October 2013, Dr. Barnes completed a physical capacities evaluation, here at issue, indicating plaintiff could sit for only 20 minutes at a time and up to 20 minutes in an 8-hour day; stand for 20 minutes at a time and up to 20 minutes in an 8-hour day; walk for 20 minutes at a time and up to 20 minutes in an 8-hour day; occasionally lift or carry up to 10 pounds, and occasionally climb stairs

and ramps.  T. 322-27.  He indicated plaintiff could not use her right hand for repetitive action such as simple grasping, the pushing and pulling of arm controls, reaching (including overhead), or fine manipulation; use her right foot for repetitive movement such as the pushing and pulling of leg controls; climb ladders or scaffolds; balance, stoop, kneel, crouch, or crawl; work around unprotected heights or moving machinery; operate a motor vehicle; be exposed to dust, odors, fumes, pulmonary irritants, extreme temperatures, or vibrations; travel without a companion for assistance; walk a block at a reasonable pace on rough or uneven surfaces; use standard public transportation; or sort, handle, or use paper/files.  T. 322-27.

A couple of months later, in December 2013, Dr. Barnes completed a Medical Opinion Re: Ability to Do Work-Related Activities (Mental).  T. 328-29.  Dr. Barnes checked virtually all categories indicating claimant had "no useful ability to function," finding plaintiff "unable to meet competitive standards" in 3 categories. T. 328-29.  In January 2014, Dr. Barnes prepared the following statement: "Olivia Moore has been a patient of mine for years and years.  Her problems have gotten worse over the years, secondary to the Active Problems listed below: 1 HRT; 2. Hysteria; 3. Hypertension; 4. Extreme Anxiety; 5. Arthritis; 6. Severe Bipolar Anxiety; 7. Severe Arthritis Knee; 8. DID/Back Pain; 9. Depression; 10.

Urticaria/Hives; 11. Chronic Fatigue Syndrome; 12. Dysphonia; 13. OSA; and 14. Hypoxia." T. 332-33.

As the ALJ noted, Dr. Barnes is a general practitioner, not a psychiatrist. Moreover, his opinions are wholly conclusory. The doctor provides no objective medical evidence to support the physical limitations he imposed. T. 322-29. In fact, the limitations regarding sitting, standing walking, and driving are inconsistent with plaintiff's own testimony. T. 62, 69-71. Dr. Barnes' opinions regarding Ms. Moore's mental limitations are inconsistent with the notes of her treating psychiatrists, which are consistent with other evidence in the record. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986) ("The weight afforded a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence as to claimant's impairments."). Dr. Barnes acknowledged he is not trained to treat bipolar disorder. In fact, on one occasion he commented "[i]t is so complicated, it is certainly outside my realm of expertise" and on another he said he "d[id]n't know much else to do about her moods." T. 297, 304. Dr. Barnes recognized plaintiff received psychiatric treatment from another provider and deferred to that provider insofar as her mental health was concerned. T. 295, 297, 304, 306. To the extent Dr. Barnes opined as to

plaintiff's mental functioning, therefore, the ALJ properly credited the opinions of plaintiff's treating psychiatrists over those of Dr. Barnes. The ALJ thus did not err in disregarding Dr. Barnes' opinions.

Claimant next argues the ALJ erred in failing to consider the combined effect of her impairments. "Where a disability claimant has alleged several severe impairments, the Secretary has a duty to consider the impairments in combination and to determine whether the combined impairments render the claimant disabled." *Jones v. Dep't of Health and Human Servs.*, 941 F. 2d 1529, 1533 (11th Cir. 1991); *see also Jones v. Bowen* 810 F. 2d 1001, 1006 (11th Cir. 1986) ("It is now well settled that the ALJ must consider the combined effects of a claimant's impairments in determining whether he is disabled."). As applied by the Eleventh Circuit, this rule requires the ALJ to "consider every impairment alleged." *Gibson v. Heckler*, 779 F. 2d. 619, 623 (11th Cir. 1986). A statement by the ALJ that "'based upon a thorough consideration of all evidence, the ALJ concludes that [claimant] is not suffering from any impairment, *or a combination of impairments* of sufficient severity to prevent him from engaging in any substantial gainful activity for a period of at least twelve continuous months[,]" will suffice to demonstrate the ALJ "has considered the combination issue." *Wheeler v. Heckler*, 784 F.2d 1073, 1076 (11th Cir. 1986). The

ALJ, however, maintains the duty to make "findings as to the effect of the combination of impairments and to decide whether the combined impairments cause the claimant to be disabled." *Bowen v. Heckler*, 748 F. 2d 629, 635 (11th Cir. 1984); *see also Walker v. Bowen*, 826 F. 2d 996 (11th Cir. 1987).

Here, the ALJ stated that "[t]hrough the date last insured, the claimant did not have an impairment *or combination of impairments* that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)." T. 14 (emphasis added). The ALJ thus considered the combination of impairments and made sufficient findings regarding the effect thereof. *See Wilson*, 284 F.3d at 1224-25. Even if he had not, plaintiff wholly failed to explain how consideration of the combination of her impairments would lead to a finding of disability.

Finally, plaintiff argues the ALJ erred in failing to find obesity a severe impairment, alone and/or in combination with her other impairments. Obesity is considered a severe impairment that can significantly limit an individual's physical or mental ability to do work activity. (Doc. 14, p.9). Claimant, however, never raised the issue of obesity before the ALJ. In applying for benefits, claimant identified her impairments as a nervous condition and high blood pressure. T. 84, 192. At the

hearing, she testified to depression; anxiety; nerves; pain/arthritis in the legs, knees, and back; fibromyalgia; and fatigue.  T. 62-65  There was no mention of obesity, either alone or in conjunction with her other medical conditions.  T.49.  The ALJ is not obligated to consider, when evaluating claimant's record, any impairments that have not been specified by the claimant. *East v. Barnhart*, 197 F. App'x 899, 902 (11th Cir. 1982).  Given that claimant never raised the issue of obesity, the ALJ did not err in failing to find obesity a severe impairment.

Nevertheless, claimant's height and weight are in the record.  The ALJ thus undoubtedly was aware of plaintiff's size.  And again, plaintiff does not explain how inclusion of obesity as a severe impairment would have changed the outcome. Disability is measured in terms of the effect of the alleged impairment on the claimant's ability to work or function.  *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987). The evidence of record shows that, despite her weight, claimant is capable of completing simple tasks independently and attending to her personal needs.  T. 72-73. Because claimant did not raise the issue of obesity before the ALJ and, in any event, made no showing as to the manner in which obesity has impacted her ability to work, the ALJ did not err in failing to consider obesity a severe impairment, either alone or in combination with plaintiff's other impairments.

Case No. 5:16cv294-CJK

CONCLUSION

For the reasons set forth above, the undersigned finds the Commissioner's decision supported by substantial evidence and application of the proper legal standards.[6] *See Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied.").

**ACCORDINGLY, it is ORDERED:**

The decision of the Commissioner is AFFIRMED and plaintiff's application for Disability Insurance Benefits is DENIED. The clerk is directed to close the file.

**DONE AND ORDERED** this 14th day of December, 2017.

/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

---

[6] The court notes that, to the extent it reviewed the legal principles upon which the ALJ's decision is based, it conducted a *de novo* review. *See Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

Case No. 5:16cv294-CJK